IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INNERWIRELESS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-312-M |
| | § | |
| JOHNSON CONTROLS, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion by Johnson Controls, Inc. To Dismiss or Stay the Complaint. Having considered all briefing and evidentiary submissions in this matter, and for the reasons set forth below, the Court **GRANTS** Defendant's Motion in part and **STAYS** this case, pending arbitration of the matter under the terms of the parties' agreement.

Background

The parties, Innerwireless, Inc. ("IW") and Johnson Controls, Inc. ("JCI"), entered into a Strategic Alliance Agreement on January 30, 2004 ("the SAA").[1] Under the terms of the SAA, JCI, a company in the business of selling building automation systems worldwide, agreed to market and sell to JCI's customers the products of IW, a company that developed a wireless distribution system ("WDS"), including an integrated access device ("IAD"). IW claims that its

---

[1] Several other agreements—the Strategic Alliance Product and Services Supply Agreement, the Strategic Alliance Joint Development and Intellectual Property Agreement, the Non-Disclosure Agreement, and the Escrow Agreement—were all incorporated into the SAA. *See* SAA § 7.6, JCI's Appendix at 19.

WDS and IAD constitute IW's trade secrets. As part of the SAA, JCI bought $9 million in IW's preferred stock, and appointed one director, Michael J. Crowe, to IW's Board of Directors.

IW claims that in May 2006, it first suspected that JCI was violating the terms of the SAA by marketing another company's IAD to JCI's customers in China. Over the next several months, both JCI and IW conducted investigations into the matter. On January 29, 2007, IW sent a "Term Sheet" to JCI, proposing a settlement of $25 million in exchange for a "mutual release of all claims between the companies arising out of the Strategic Alliance Agreement, the Confidentiality Agreement dated March 21, 2003, and the Mutual Non-Disclosure Agreement dated March 15, 2005." JCI's Appendix at 265–70. JCI declined IW's proposal and, on February 6, 2007, filed a Demand for Arbitration with the American Arbitration Association ("AAA"). *Id.* at 271–86.

On February 20, 2007, IW filed this suit. On March 9, 2007, IW filed its First Amended Complaint, alleging claims that JCI aided and abetted Crowe's breach of fiduciary duties, breach of the Mutual Non-Disclosure Agreement, false designation of origin under the Lanham Act and trade dress infringement, unfair competition, violations of the Federal Copyright Act, tortious interference with prospective business and contractual relations, and civil conspiracy. IW asserts that these claims "are distinct from the claims pending before the AAA [which include counterclaims filed by IW] and exist independently of the SAA and the March 21, 2003, Confidentiality Agreement." First Amended Complaint at 3, ¶7.

JCI has moved to dismiss or stay, arguing that each count in the Amended Complaint is subject to mandatory arbitration. The SAA included the following provision on dispute resolution:

> Disputes. If a dispute arises, the parties shall promptly attempt in good faith to resolve the dispute by negotiation. All disputes not resolved by negotiation shall be finally resolved in accordance with the Commercial Rules of the American Arbitration Association in effect at that time, except as modified herein. All disputes shall be decided by a single arbitrator in Chicago, Illinois. The arbitrator shall render a decision no later than nine months after the demand for arbitration is filed, and the arbitrator shall state in writing the factual and legal basis for the award. The arbitrator shall issue a scheduling order that shall not be modified except by the mutual agreement of the parties. Judgment may be entered upon the award in the highest state or federal court having jurisdiction over the matter. The prevailing party shall recover all costs, including attorney's fees, incurred as a result of the dispute. This Agreement shall be governed and enforced under the laws of the State of Wisconsin, except for this Paragraph 7.1 which shall be governed and enforced under the Federal Arbitration Act.

SAA § 7.1, JCI's Appendix at 18.

## Analysis

The Federal Arbitration Act provides for a stay of federal court proceedings where the parties have agreed their disputes will be subject to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. A court may dismiss a case "when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

"Whether a contract's arbitration clause requires arbitration of a given dispute is a matter

of contract interpretation, which is to be performed by the court." *Beckham v. William Bayley Co.*, 655 F. Supp. 288, 290 (N.D. Tex. 1987) (citations omitted). "Determining whether the parties agreed to arbitrate the dispute in question involves two considerations: (1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998).

The parties do not dispute the validity of the arbitration clause. Therefore, the Court need only determine whether the dispute in question falls within the scope of the arbitration agreement. The Court must first determine whether the arbitration clause at issue here is broad or narrow. "If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). "On the other hand, if the clause is narrow, the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause." *Id.* at 755. If "the scope of an arbitration clause is fairly debatable or reasonably in doubt," there is a heavy presumption in favor of arbitration. *Id.* "Arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Pennzoil*, 139 F.3d at 1067 (internal quotation omitted).

Under the law of this circuit, arbitration clauses covering "any dispute" related to an agreement or business relationship have been interpreted to be broad arbitration clauses. *See, e.g., Ford v. Ables*, 207 Fed. Appx. 443, 447 (5th Cir. 2006) (clause mandating arbitration of "any Claim related to" the retail installment contract, followed by an inexhaustive list of

4

examples, was broad)*;* *Pennzoil*, 139 F.3d at 1067 (clause mandating arbitration of "any dispute, controversy or claim arising out of or in relation to or in connection with this Agreement or the operations carried out under this Agreement, including without limitation any dispute as to the validity, interpretation, enforceability or breach of this Agreement" was broad); *In re Hornbeck*, 981 F.2d at 755 (arbitration clause providing that "should any dispute arise between them, the matter shall be referred to arbitration" was broad); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 36 (5th Cir. 1990) (clause by which parties agreed "that any and all disputes between them, and any claim by either party that cannot be amicably settled, shall be determined solely and exclusively by arbitration under the Federal Arbitration Act" was broad); *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 636 (5th Cir. 1985) (arbitration clause covering any dispute "with respect to the interpretation or performance" of the contract was broad); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985) (clause providing for arbitration of "any dispute or difference between the parties arising out of this Charter" was broad).

On the other hand, courts have interpreted clauses that include language limiting the scope of arbitration as narrow. *See, e.g., Beckham*, 655 F. Supp. 288, 291 (clause providing for arbitration of "any disagreement between the Seller and the Purchaser as to the intent of this contract" was narrow); *Coffman v. Provost Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 725 (E.D. Tex. 2001) (interpreting a clause mandating arbitration of "any dispute or claim arising under this partnership agreement" as narrow). *See also Coffey v. Cushman & Wakefield*, No. 01 Civ.9947, 2002 WL 1610913 (S.D.N.Y. July 22, 2002) (clause mandating arbitration of disputes that a broker has "with one or more other brokers" was narrow); *United Steelworkers of America,*

*AFL-CIO-CLC v. Duluth Clinic, Ltd.*, 413 F.3d 786, 789–90 (8th Cir. 2005) (clause providing for arbitration of all unresolved grievances was narrow, when "grievances" was defined in the collective bargaining agreement as "any claim by the Union or the Employer, alleging a violation of a specific contract provision or adherence to the terms and provisions of this Agreement").

IW argues that because the parties did not use "standard 'broad' language" in the arbitration clause, the Court must read the clause narrowly. A review of the cases cited above, however, shows that there is no "standard language" that is required for a clause to be interpreted as broad. Though broad arbitration clauses sometimes include the terms "relate to" or "are connected with" the contract, rather than "arising out of" the contract, there is no requirement that a clause include any of those phrases to be interpreted as narrow or broad. IW cites the *Beckham* opinion and Judge Fitzwater's quoting of a "standard broad arbitration clause." In *Beckham*, in contrast to this case, the parties limited the scope of the arbitration clause to "any disagreement . . . as to the intent of this contract." Judge Fitzwater did not hold that the parties' failure to use any particular language rendered the clause narrow, but rather used the parties' omission of expansive language as evidence that the parties did not intend to arbitrate "all of the issues arising out of their business relationship."

In contrast to *Beckham* and the other cases in which courts have found arbitration clauses to be narrow, there is no limiting language in the clause at issue. The parties agreed to use the arbitration process "if a dispute arises," and that "all disputes shall be decided by a single arbitrator in Chicago, Illinois." In the Court's view, this language is analogous to the phrase "any dispute," which the *Sedco* and *Hornbeck* courts upheld as broad, finding it "difficult to imagine broader language than that contained in the arbitration clause." *See In re Hornbeck*, 981 F.2d at

6

755; *Sedco*, 767 F.2d at 1145. Given the general language in the clause providing for arbitration "if a dispute arises," the lack of a limitation on that clause, and the "heavy presumption" in favor of arbitration, the Court finds that the clause at issue here is broad and, therefore, that "the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *In re Hornbeck*, 981 F.2d at 754.

Because the arbitration clause is broad, the Court need not determine whether each individual claim arises under the contract. "Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil*, 139 F.3d at 1067. All of IW's claims—claims for aiding and abetting Crowe's breach of fiduciary duties, breach of the Mutual Non-Disclosure Agreement, claims under the Lanham Act for false designation of origin and trade dress infringement, unfair competition, claims for violation of the Federal Copyright Act, tortious interference with prospective business and contractual relations, and civil conspiracy—have a "significant relationship" to the SAA and the agreements incorporated therein since, but for the SAA, the parties would not have had the business relationship that gave JCI access to IW's WDS and IAD products, gave JCI a seat on IW's board of directors, gave JCI and IW mutual access to confidential information, and gave JCI the authority to market and sell IW's products to JCI's customers.

With regard to the Lanham Act and Unfair Competition claims in particular, the Court notes IW's citation to the Fifth Circuit's opinion in *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243 (5th Cir. 1998), and the cases from this district that have relied on *Ford*. *See A&A Global Indus., Inc. v. Wolfe*, Civil Action No. 3:01-CV-1515-D, 2001 WL

7

1343628 (N.D. Tex. Oct. 29, 2001); *Osteomed, L.P. v. Koby Indus., L.P.*, Civil Action No. 3:06-CV-1045-K, 2006 WL 3392184 (N.D. Tex. Nov. 20, 2006). However, the Court finds those cases to be distinguishable from this one. *Ford* was decided under the applicable Texas law, since the parties in that case had agreed that "any controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by arbitration in accordance with the Texas General Arbitration Act." 141 F.3d at 246. Applying Texas law, the court held that the plaintiff's tort claim was not arbitrable because it was not "so interwoven with the contract that it could not stand alone," but rather was "completely independent of the contract and could be maintained without reference to a contract." *Id.* at 250–51. Though the court commented in a footnote that "there is no perceptible difference between the federal and Texas standards in this respect," i.e., between the federal standard of "touching matters covered by" the agreement or the Texas standard of "interwoven with the agreement," there is a difference between the methodology used under Texas law and that used under to federal law to classify an arbitration clause. *Id.* at 250, n.7. The *Ford, Wolfe,* and *Osteomed* courts did not characterize the arbitration clause at issue as "broad" or "narrow," as is the circuit's practice when considering cases under federal arbitration law, and therefore did not apply *Hornbeck*, which requires a court to stay an action to allow the arbitrator to decide if a dispute falls within a broad arbitration clause. Since federal arbitration law applies to the broad arbitration clause in this case,[2] the Court stays all claims, including the Lanham Act and Unfair Competition claims, to allow the arbitrator to determine this issue. *See Third Party Advantage Adm'rs, Inc. v. J.P. Farley Corp.*,

---

[2] The arbitration provision includes a choice of law provision that "the Agreement shall be governed and enforced under the laws of the State of Wisconsin, except for this Paragraph 7.1 which shall be governed and enforced under the Federal Arbitration Act."

8

Civil Action No. 3:06-CV-534-G, 2006 WL 3445216 (N.D. Tex. Nov. 27, 2006) (finding that *Ford* did not apply because the agreement provided that federal law governed and holding that plaintiffs' tort claims were "embraced" by the underlying contract, which "served as the conduit through which these alleged acts were made possible").

Pursuant to the broad arbitration clause, the Court also leaves it to the arbitrator to determine whether IW's claim for breach of the Mutual Non-Disclosure Agreement falls within the scope of the arbitration clause. The Court notes the disagreement between the parties as to whether the Mutual Non-Disclosure Agreement was a separate agreement not governed by the SAA's arbitration clause or was an extension of the Non-Disclosure Agreement, which was incorporated into the SAA through §7.6. Since the claims bear a significant relationship to the SAA, the Court finds the claims to be referable to the arbitrator under the broad arbitration clause.

The Court also refers IW's tortious interference claim to arbitration because it bears a significant relationship to the SAA. The Court therefore denies JCI's Motion to Dismiss Count Eight of the Amended Complaint, without prejudice to JCI presenting these arguments to the arbitrator.

Conclusion

Because the Court has determined that all of IW's claims are referable to arbitration pursuant to the broad arbitration clause in the parties' SAA, the Court **GRANTS** JCI's Motion to Stay the Case. The Court **DENIES** JCI's Motion to Dismiss IW's claims, without prejudice to JCI's raising those arguments before the arbitrator in this case. The Court **DENIES** JCI's

9

Motion to Dismiss IW's Tortious Interference claim. The stay will remain in effect until the parties complete the alternative dispute resolution process set forth in § 7.1 of the SAA. The clerk is directed to close the case, subject to reopening when the arbitration is completed. The parties are to keep the Court advised of the status of the arbitration.

**SO ORDERED.**

**DATED**: August 27, 2007.

_____
**BARBARA M.G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**